UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DEREK GUBALA,

      Plaintiff,

v.

TIME WARNER CABLE, INC.,

      Defendant.

Case No. 15-cv-1078-pp

---

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT (DKT. NO. 17), DENYING AS MOOT PLAINTIFF'S MOTION TO COMPEL (DKT. NO. 25), GRANTING THE PLAINTIFF'S MOTION TO FILE A PORTION OF THE MOTION TO COMPEL UNDER SEAL (DKT. NO. 24), AND DISMISSING CASE**

---

## I.   FACTUAL BACKGROUND

On September 3, 2015, the plaintiff filed a complaint on his own behalf, and on behalf of putative class members. Dkt. No. 1. The complaint alleged that the defendant, a cable services provider, collected personal information—names, addresses, Social Security numbers, phone numbers, etc.—from "tens of millions of consumers across the country." Id. at 1. The complaint further alleged that when after customers terminate their services with the defendant, the defendant "continues to maintain personally identifiable information on all of its previous customers indefinitely." Id. at 1-2. The complaint alleged that this practice violated 47 U.S.C. §551(e) (subsection e of the Cable Communications Policy Act, or "CCPA"), which requires cable operators to destroy personally identifiable information "[i]f the information is no longer

1

necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under subsection (d) of this section or pursuant to a court order." Id.; 47 U.S.C. §551(e).

In the original complaint's prayer for relief, the plaintiff sought class certification; an order enjoining the defendant from "the unlawful practices and statutory violations asserted herein;" actual, liquidated and punitive damages as provided by the CCPA; and attorneys' costs and fees as provided by the CCPA. Id. at 14.

On October 5, 2015, the defendant filed in lieu of an answer a motion asking the court to compel arbitration, and to stay the proceedings. Dkt. No. 6. The motion alleged that the plaintiff had entered into a Residential Services Subscriber Agreement with the defendant, and that by entering into that agreement, the plaintiff had agrees to resolve his claim via arbitration. Id. The brief in support of the motion laid out, verbatim, the arbitration provision in the subscriber agreement. Dkt. No. 6-1 at 7.[1] The pertinent part of the agreement states that, "[e]xcept for claims for injunctive relief . . ., any past, present or future controversy or claim arising out of or related to this agreement shall be resolved by binding arbitration . . . ." Id. In other words, the subscriber agreement provided that claims for money damages had to be resolved through binding arbitration, not litigation.

Three weeks later, rather than filing a response to the motion to stay proceedings and compel arbitration, the plaintiff filed an amended complaint.

---

[1] The court denied this motion as moot, and without prejudice, after the plaintiff filed his second amended complaint. Dkt. No. 16.

Dkt. No. 9. The only significant change from the original complaint to the amended one appeared in the prayer for relief; in the October 26, 2015 amended complaint, the plaintiff deleted his request for damages, costs and fees. Id. at 13. Despite removing his request for monetary damages, costs and fees, however, the plaintiff left in the amended complaint an extensive discussion regarding the economic value consumers place on the protection of personally identifiable information. Id. at 6-9.

Less than two weeks later, the parties filed a joint motion asking the court to grant the plaintiff leave to file a second amended complaint. Dkt. No. 10. The motion indicated that the defendant believed that the amended complaint, like the original, sought money damages, which meant that the claim had to be submitted to arbitration pursuant to the subscriber agreement. Id. at 1. While the plaintiff "disagree[d]," he sought to file a second amended complaint seeking only injunctive relief. Id. In an attempt to avoid filing another motion to compel arbitration, the defendant joined the motion. Id. The court granted leave to amend on November 10, 2015.

The plaintiff filed the second amended complaint on November 20, 2015. Dkt. No. 12. On December 23, 2015, the defendant filed this motion to dismiss the second amended complaint. Dkt. No. 17. The defendant sought dismissal of this complaint because the plaintiff had failed to plead the elements of a claim for injunctive relief, and because the request for injunctive relief was allegedly vague. Id. at 2. The court heard oral argument on the motion on May 16, 2016, after the parties had fully briefed it. Dkt. No. 34. On the day that the court

heard oral argument, the United States Supreme Court issued its decision in Spokeo v. Robins, ___ U.S. ___, 136 S. Ct. 1540 (May 24, 2016). The parties asked the court to allow them to submit simultaneous briefs regarding whether Spokeo had any impact on the case; the court granted that request, and the parties filed their supplemental briefs on June 6, 2016. Dkt. Nos. 35, 36.

**II.    GOVERNING LAW**

In order to have Article III standing to pursue a claim that a plaintiff has suffered harm under a statute where "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk," the plaintiff "cannot satisfy the demands of Article III by alleging a bare procedural violation." Spokeo,136 S. Ct. at 1550. The plaintiff must demonstrate that the procedural violation resulted in "concrete harm." Id.

Assuming that a plaintiff has standing, that plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief" to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id.

4

(quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

"The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-507 (1959). Injunctive relief is appropriate, then, when, among other things, the moving party can "demonstrate that (1) no adequate remedy at law exists; [and] (2) it will suffer irreparable harm absent injunctive relief . . . ." U.S. v. Rural Elec. Convenience Co-op. Co., 922 F.2d 429, 432 (7th Cir. 1991) (citations omitted). "It is well settled that the availability of an adequate remedy at law renders injunctive relief inappropriate." Id. (citing, e.g. Northern Cal. Power Agency v. Grace Geothermal Corp., 469 U.S. 1306 (1984) and Beacon Theatres, Inc., 359 U.S. at 509).

## III. ANALYSIS

The defendant has asked the court to dismiss the second amended complaint. Dkt. No. 12. The prayer for relief in the second amended complaint asks the court to enter an order "A. [d]eclaring that this action may be maintained as a class action, and certifying the Class as requested herein; B. [e]njoining TWC from the unlawful practices and statutory violations asserted herein; and C. [g]ranting such other and further relief as may be just and proper." Id. at 13. As the defendant has argued, the plaintiff now seeks only an injunction barring the defendant from "the unlawful practices and statutory violations" alleged in the complaint.

### A. Standing

As noted above, the court allowed the parties to submit supplemental briefs after the Supreme Court issued its decision in Spokeo. The defendant argues that under Spokeo, the plaintiff does not have Article III standing to bring his claim, because he alleges only that the defendant committed a procedural violation of the CCPA by retaining his personally identifiable information. Dkt. No. 35 at 9-10. The defendant argues that because the plaintiff has not alleged that the defendant distributed or sold or disclosed his personally identifiable information to a third party, and because the plaintiff did not allege that the defendant gained some economic benefit from that retention, he cannot prove the "concrete harm" which the Spokeo court described.

6

The court agrees that Spokeo addresses directly the circumstances of the plaintiff's case. In Spokeo, the consumer plaintiff alleged that a website operator violated the Fair Credit Reporting Act ("FCRA") when it published inaccurate information about him. Spokeo, 136 S. Ct. at 1544. The Ninth Circuit found that the plaintiff had standing, because he had alleged that the defendant violated his personal statutory rights, not just those of the putative class, and because he had a personal, individualized interest in the handling of his credit information. Id. at 1546.

The Supreme Court found that the Ninth Circuit had not gone far enough in its analysis. The Court began by explaining the three "irreducible constitutional minimum" factors a plaintiff must demonstrate to show Article III standing: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. at 1547 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). The burden of proving those factors lies with the plaintiff. Id. (citation omitted). And at the pleading stage, the plaintiff must "'clearly . . . allege facts demonstrating' each element." Id. (citation omitted).

The Spokeo Court focused on the first element—the requirement that the plaintiff prove an "injury in fact." Id. For a plaintiff to prove that he has suffered an injury in fact, the plaintiff must "show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Id. at 1548 (citing Lujan,

504 U.S. at 560). The Supreme Court concluded that while the Ninth Circuit had considered whether the plaintiff had proven a *particularlized* injury (one which "affect[s] the plaintiff in a personal and individual way," id. (citation omitted)), it had not considered the other component of an injury-in-fact—the requirement that the injury be concrete. Id. "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." Id. The injury must be "'real,' and not 'abstract.'" Id. This does not mean, the Court clarified, that the injury must be tangible; "intangible injuries can nevertheless be concrete." Id. at 1549.

Acknowledging that intangible harms are somewhat more difficult to identify than tangible ones, the Court advised that looking to history ("whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts") and the judgment of Congress (which is "well positioned to identify intangible harms that meet minimum Article III standing requirements") is instructive. Id. But even in cases in which a plaintiff has a statutory right (granted by Congress in its role of "identifying and elevating intangible harms"), the plaintiff must allege a "concrete injury even in the context of a statutory violation." Id. For that reason, the Court stated, the plaintiff could not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." Id. The Court finished its analysis by conceding that the *risk* of concrete harm might, in some circumstances, "constitute an injury in fact." Id.

In the context of the Spokeo plaintiff's allegation that the defendant had committed a violation of the statutory provisions of the FCRA, the Supreme Court found that Congress had identified and elevated an intangible harm—the risk of "the dissemination of false information." Id. at 1550. The Court concluded, however, that the lower courts had not analyzed whether the plaintiff had shown facts demonstrating a real, concrete risk of harm to him. Id. The Court noted that even if the information the defendant had posted about the plaintiff had been inaccurate, for example, "not all inaccuracies cause harm or present any material risk of harm." Id. (The Court used the example of a defendant violating the FCRA by disseminating a false zip code; it wondered what real, concrete injury such a statutory violation could cause. Id.) Accordingly, the Court vacated the judgment of the Ninth Circuit, and remanded the case for further proceedings relating to the concrete harm requirement.

The facts alleged in the second amended complaint in this case present a similar set of circumstances. In the second amended complaint, the plaintiff alleges that Congress has identified and elevated an intangible harm—the risk to subscribers' privacy created by the fact that cable providers have "an enormous capacity to collect and store personally identifiable data about each cable subscriber." Dkt. No. 12 at 3-4 (citing H.R. Rep. 98-934 at 4666-67 (1984)). He has identified the statutory protection Congress has provided—the requirement in the CCPA that cable providers destroy personally identifiable information when it is no longer required for the purpose for which it was

9

collected. Id. at 2. The plaintiff further alleges that he had provided his personally identifiable information to the defendant when he subscribed in December 2004, that he terminated his service in September 2006, and that when he called the defendant in December 2014 (eight years later), he learned that the defendant still retained his personally identifying information. Id. at 9, ¶¶33-36. These allegations, like the plaintiff's allegations in Spokeo, are sufficient to satisfy the particularized injury prong of the injury-in-fact requirement.

But there are no allegations in the thirteen pages of the second amended complaint showing that the plaintiff has suffered a *concrete* injury as a result of the defendant's retaining his personally identifiable information. The complaint contains a detailed discussion of media articles which support the proposition that consumers value their personally identifiable information—and the privacy of that information—very highly; some researchers even have attempted to quantify in dollars the level of consumers' value. Id. at 6-9. A statement that consumers highly value the privacy of their personally identifiable information, however, does not demonstrate that the plaintiff has suffered a concrete injury. He does not allege that the defendant has disclosed his information to a third party. Even if he had alleged such a disclosure, he does not allege that the disclosure caused him any harm. He does not allege that he has been contacted by marketers who obtained his information from the defendant, or that he has been the victim of fraud or identity theft. He alleges only that the CCPA requires cable providers to destroy personal information at a certain

10

point, and that the defendant hasn't destroyed his. These allegations are almost identical to the allegations the plaintiff made in Spokeo. In fact, one might argue that the Spokeo plaintiff was a bit closer to alleging a concrete injury, because the defendant wasn't just keeping his information; it was publishing, to anyone who viewed the website, inaccurate information. The plaintiff in this case does not allege that the information the defendant retains is inaccurate, nor does he allege that the defendant has published it, or made it available, to anyone.

The plaintiff argues that Spokeo isn't relevant to the question of whether he has standing, because the Seventh Circuit already has held that a procedural violation such as the one he alleges does demonstrate an injury for the purposes of Article III standing. Dkt. No. 36 at 5. In support of this proposition, the plaintiff cites to the Seventh Circuit's decision in Sterk v. Redbox Automated Retail, LLC, 672 F.3d 535 (7th Cir. 2012). In Sterk, the plaintiff alleged that a video rental company had violated the Video Privacy Protection Act ("VPPA") by failing to destroy personally identifiable information. Id. at 536. The defendant took an interlocutory appeal to the Seventh Circuit, for the sole purpose of asking the court to determine whether the VPPA provided for damages for a plaintiff whose personal information had not been destroyed. Id.

In analyzing this question, the court first looked at the structure of the statute. Id. at 537-538. This court will hold that portion of the analysis until a later point in this decision and order. The court then moved to a practical

11

consideration of damages for the retention of personally identifiable information, and asked, "How could there be injury, unless the information, not having been destroyed, were disclosed?" Id. at 538. The court observed that "[i]n interpreting a statute even less indicative that an actual injury must be proved to entitle the plaintiff to statutory damages, . . . the Supreme Court held that the plaintiff could not obtain statutory damages without proof of an actual injury." Id. (citing Doe v. Chao, 540 U.S. 614 (2004)). The court stated that the "injury inflicted" by a failure to destroy private information "even if lawfully obtained and not disclosed" "is enormously attenuated," and speculated that Congress may well have decided not to provide for damages for that reason. Id. at 539. The Seventh Circuit thus reversed the district court's decision that the plaintiff could sue for damages for violation of the document destruction provision of the VPPA.

The plaintiff asserts that Sterk stands for the proposition that a "plaintiff had standing to sue to enjoin defendant for wrongfully retaining personal information in violation of Video Privacy Protection Act." Dkt. No. 36 at 5. The court is a bit stymied by this assertion. The Sterk opinion makes no direct reference to Article III standing (although it discusses the absence of any actual injury). As the court framed the question on appeal, it does not appear that the defendant appealed on the basis of standing—rather, the defendant appealed whether the *statute* authorized damages for violation of the information destruction provision. After concluding that the statute did not provide for such damages, the court did observe that the VPPA also authorized "other relief

12

besides just damages." Sterk, 672 F.3d at 539. But the court did not follow up that observation by stating, "And obviously the plaintiff would have Article III standing to pursue such other relief." Indeed, the court stated that "when all that a plaintiff seeks is to enjoin an unlawful act, there is no need for express statutory authorization; 'absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction.'" Id. (quoting California v. Yamasaki, 442 U.S. 682, 705 (1979)). The Sterk court did *not* hold that the plaintiff had standing to pursue injunctive relief (if, indeed, that plaintiff even sought to pursue such relief). It merely re-stated the fact that if a federal court has jurisdiction over a case, it has the equitable power to issue injunctions in that case.

Given the clear directive in Spokeo, the court finds that while the second amended complaint alleges a particularized injury, it does not allege a concrete harm, and therefore that the plaintiff does not have Article III standing to bring this suit.

B. Failure to State a Claim

Even if the plaintiff had standing to bring the claim alleged in the second amended complaint, the court would be required to dismiss that complaint for failure to state a claim upon which relief may be granted. As noted, the plaintiff seeks only injunctive relief. In order to obtain that relief, he must show that he has no adequate remedy at law, and that he will suffer irreparable harm if the court does not grant the injunctive relief. The defendant has argued, and the

13

court agrees, that the plaintiff cannot demonstrate that he has no adequate remedy at law.

The statute at issue here, the CCPA, states in subsection (e) that "[a] cable operator shall destroy personally identifiable information if the information is no longer necessary for the purpose for which it was collected and there are no pending requests or orders for access to such information under subsection (d) of this section or pursuant to a court order." 47 U.S.C. §551(e). The next subsection, subsection (f), provides that "[a]ny person aggrieved by any act of a cable operator in violation of this section" can sue in district court, and if successful, may recover actual damages, punitive damages, and attorneys' fees and costs. The subsection provides that those monetary remedies are "in addition to any other lawful remedy available to a cable subscriber." 47 U.S.C. §551(f).

The plaintiff argues that subsection (f) does not afford him an adequate remedy at law, relying on the <u>Sterk</u> decision. The plaintiff's reliance on <u>Sterk</u> is misplaced, because the <u>Sterk</u> court reached its opinion that damages were not available under the VPPA as a result of the way that particular statute was structured.

The VPPA (18 U.S.C. §2710), like the CCPA, is divided into subsections. Subsection (a) lays out the definitions used in the statute. Subsection (b) prohibits video tape service providers from disclosing personally identifiable information except in limited circumstances. Subsection (c) provides that anyone aggrieved by the act of a person acting in violation of the statute can

14

sue in district court, and can recover actual damages, punitive damages, fees and costs, and "such other preliminary and equitable relief as the court determines to be appropriate." 18 U.S.C. §2710(c)(2)(D). Subsection (d) defines personally identifiable information. And subsection (d) requires video tape provider services to destroy personally identifiable information within a certain time frame.

The Sterk court pointed out that the subsection of the VPPA which provides for civil remedies—subsection (c)—appears *before* the subsection which requires destruction of personally identifiable information—subsection (e). Sterk, 672 F.3d at 538. The court found the "biggest interpretive problem" in what it described as a "not well drafted" statute to be

> . . . created by the statute's failure to specify the scope of subsection (c), which creates the right of action on which this lawsuit is based. If (c) appeared after all the prohibitions, which is to say after (d) and (e) as well as (b), the natural inference would be that any violator of any of the prohibitions could be sued for damages. But instead (c) appears after just the first prohibition, the one in subsection (b), prohibiting disclosure. This placement could be an accident, but we agree with the only reported appellate case to address the issue, *Daniel v. Cantrell*, 375 F.3d 377, 384-85 (6th Cir. 2004), that it is not; that the more plausible interpretation is that it is limited to enforcing the prohibition of disclosure. For one thing, the disclosure provision, but not the others, states that a "video tape service provider who knowingly discloses, to any person, personally identifiable information . . . shall be liable to the aggrieved person for the relief provided in subsection [c]," which includes damages.

Id.

For this reason, as well as because the court wondered how a customer could be harmed by the mere retention of personally identifiable information

15

absent disclosure, the Sterk court concluded that the plaintiff could not obtain damages for a violation of the information destruction provision of the VPPA.

The plaintiff in this case asserts that Sterk stands for the proposition that one cannot obtain damages for a provider's violation of an information destruction provision. The court does not read Sterk nearly so broadly. The Sterk court based its decision on the order in which the VPPA was laid out—the fact that the civil remedies provision came *before* the information destruction provision. The statute at issue in this case—the CCPA—is not structured that way. Subsection (a) of the CCPA describes the notice cable providers must give subscribers about personally identifiable information; subsection (b) describes when a provider may collect such information; subsection (c) prohibits disclosure of such information with limited exceptions; subsection (d) provides for subscriber access to the information; subsection (e) requires destruction of the information after a period of time; and subsection (f) describes the civil remedies available to "any person aggrieved by an act of a cable operator in violation of this section." The civil remedies provision in the CCPA comes *after* the prohibition on information retention. Unlike it did with the VPPA, Congress provided a damages remedy for violation of the information destruction requirement in the CCPA.

So while the Seventh Circuit held in Sterk that Congress had not provided a damages remedy for a violation of the information destruction provision of the VPPA, Congress has provided a damages remedy for a violation of the information destruction provision of the CCPA. If, therefore, the plaintiff

16

in this case had alleged facts showing that he had suffered a concrete harm from the defendant's retention of his personally identifying information, the CCPA would have allowed him to seek monetary damages for that harm.

The reason the second amended complaint does not seek money damages is not because no such remedy is available to the plaintiff. The plaintiff seeks only injunctive relief for one reason: to avoid the arbitration requirement of the subscriber agreement. If the plaintiff seeks monetary damages, the subscriber agreement requires that he submit that dispute to binding arbitration. To avoid that requirement, the plaintiff has amended his complaint twice, in an attempt to remove any indication that he seeks monetary damages. Put a different way, it is not that the plaintiff does not have a remedy at law; it is that he does not want to avail himself of that remedy at law, because to do so, he would have to eschew federal court and submit himself to a binding arbitration award.

Because the CCPA provides for money damages for violations of the information destruction provision of the CCPA, therefore, the plaintiff has an adequate remedy at law. That means that he cannot prove one of the two necessary elements for obtaining injunctive relief—even if he did have standing.

## III.  CONCLUSION

The defendants make other arguments—for example, they argue that the injunctive relief the plaintiff seeks is vague and overly broad, and seeks nothing more than an order requiring the defendant to comply with the law (something the defendant is required to do even without a court order). Because the court

finds that the plaintiff does not have standing to bring the claim asserted in the second amended complaint, and because even if he did have standing, he cannot state a claim upon which the injunctive relief he seeks can be granted, the court need not reach these other arguments.

On February 24, 2016, the plaintiff filed a motion asking the court to compel the defendants to provide certain written discovery responses. Dkt. No. 25. They also filed a motion asking the court to allow them to file under seal the portions of Exhibit F to the motion Bates-stamped TWC 42-340 and 523-28, because the defendant had designated those documents as confidential internal operating policies of the defendant. Dkt. No. 24. The court will deny the motion to compel as moot, given that the court is dismissing the case for lack of standing. The court will grant the motion to seal, however, to avoid unwarranted disclosure of the defendant's private internal policy information.

The court **GRANTS** the defendant's motion to dismiss the second amended complaint, Dkt. No. 17, and **ORDERS** that the second amended complaint is **DISMISSED FOR LACK OF STANDING**.

The court **DENIES** the plaintiff's motion to compel written discovery responses as **MOOT**. Dkt. No. 25.

The court **GRANTS** the plaintiff's motion to seal Dkt. No. 25-3, Exhibit F to the motion to compel, Bates-stamped pages TWC 42-340 and 523-28. The

court **ORDERS** that these documents shall remain under seal until further order of the court.

Dated in Milwaukee, Wisconsin this 17th day of June, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge